# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PAUL K. KITCHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-0020 |
| ) | Judge Aleta A. Trauger |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Plaintiff Paul Kitchen brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.

On January 30, 2017, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 20), recommending that the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14) be denied and that the decision of the Social Security Administration ("SSA") be affirmed. The plaintiff has filed timely Objections. (Doc. No. 24.) For the reasons discussed herein, the court will overrule the Objections, accept the R&R, and deny the plaintiff's motion.

## I. PROCEDURAL BACKGROUND[1]

In 2011, the plaintiff filed his application for DIB, claiming that he had been disabled since March 1, 2011, due to back pain and depression. The Social Security Administration

---

[1] This opinion presumes familiarity with the R&R, which contains a more detailed summary of the plaintiff's medical history. The court recites here only the facts necessary to review the plaintiff's Objections.

("SSA") denied the application initially and upon reconsideration. (Doc. No. 10 ("AR") at 79, 80, 83, 84–86, 90.[2]) The plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). Two administrative hearings were convened, the first on January 9, 2014 (AR 44–78), and the second on July 15, 2014 (AR 25–43), after additional medical records were made part of the Administrative Record. The plaintiff and a vocational expert ("VE") appeared and testified at the hearings.

The ALJ issued a decision unfavorable to the plaintiff on August 15, 2014, finding that the plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (AR 7–24.) The ALJ made the following specific findings:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date (20 CFR 404.1571 et seq.).
>
> (3) The claimant has the following severe impairments: degenerative disc disease and major depressive disorder (20 CFR 404.1520(c)). . . .
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except with no more than frequent postural activities of climbing, stooping, balancing, kneeling, crouching, and crawling; must avoid concentrated exposure to hazards; has the ability to understand, remember, and carry out simple, detailed, and multi-step detailed, but no complex and not [sic] executive level tasks; can maintain concentration and attention for such tasks with normal breaks spread throughout the day; can interact appropriately with others; and can adapt to occasional changes in the workplace and job duties. . . .
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565). . . .

---

[2] Page references to the Administrative Record (Doc. No. 10) are to the Bates stamp at the lower right corner of each page.

(7) The claimant was . . . 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). . . .

(11) The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

(AR 12–19).

The Appeals Council declined review of the case (AR 1), thus rendering the ALJ's decision the "final decision" of the Commissioner.

The plaintiff filed his Complaint initiating this action on January 11, 2016. (Doc. No. 1.) The SSA filed a timely Answer (Doc. No. 9), denying liability. The plaintiff filed his Motion for Judgment on the Administrative Record (Doc. No. 14), which the SSA opposed (Doc. No. 16), and the plaintiff filed a Reply brief (Doc. No. 17). On January 30, 2017, the magistrate judge issued his R&R (Doc. No. 20), recommending that the plaintiff's motion be denied and that the SSA's decision be affirmed.

The plaintiff filed timely Objections (Doc. No. 24), and the SSA has filed a Response in opposition to the Objections (Doc. No. 25).

## II. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and

recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. § 405(h). The court's review of an ALJ's decision is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

**III. OBJECTIONS**

Although the plaintiff does not list or enumerate them, the court construes the Objections as setting forth the following objections to the R&R:

1. The ALJ violated the treating-physician rule in declining to give controlling weight to the opinion of Dr. Travis Pardue, the plaintiff's treating physician, and, instead, according greater weight to the State Agency Examiners' opinions.

2. The ALJ erred in discounting Dr. Pardue's opinion based on inconsistencies between two Medical Source Statements completed approximately three years apart.

3. The ALJ improperly relied on the results of the plaintiff's cardiopulmonary test, which is specifically intended to measure only heart, lung, and metabolic conditions and not to measure the extent of an individual's functional limitations.

4. The magistrate judge erred in concluding that the medical records document that the plaintiff has "minimal functional restrictions" (Doc. No. 24, at 4), because the clinical documentation clearly shows the presence of abnormal neurological findings on numerous occasions.

5. The ALJ failed to acknowledge that one of the non-examining physician consultants "openly admitted" that the plaintiff's treating physician's opinion "is not inconsistent with other evidence and is therefore given controlling weight." (*Id.* (quoting AR 311).)

6. The ALJ erred in relying on a finding that the plaintiff was receiving conservative treatment.

**IV. ANALYSIS**

All of the plaintiff's objections are essentially variants of his argument that the magistrate judge erred in concluding that the ALJ did not violate the treating physician rule. The court finds,

as set forth below, that the ALJ did not apply an incorrect legal standard and that, although substantial evidence in the record clearly would support a conclusion that the plaintiff is disabled by back pain, the ALJ's conclusion to the contrary is also supported by substantial evidence.

### A. Treating Physician Rule

Under the so-called "treating physician rule," an ALJ must give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it:

> the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.

*Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).

The regulations impose upon ALJs a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)). This requirement is intended, in part, "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an

administrative bureaucracy that []he is not." *Wilson*, 378 F.3d at 544 (citation omitted).

    **B.    The ALJ's Reasons For According Little Weight To Dr. Pardue's Opinions**

The ALJ stated in her opinion that she had considered the opinions of the treating physician, Dr. Travis Pardue, and "gives them little weight." (AR 17.) She identified the following reasons for giving Dr. Pardue's opinions little weight:

> The undersigned notes that Dr. Pardue has a treatment history with the claimant; however, his opinions are not supported by his records (Exhibits 8F and 9F) or by the records of the pain management [clinic] (Exhibit 11F and 14F), which document normal gait, motor, sensory, and coordination throughout. Furthermore, his opinion is not supported by cardiopulmonary exercise testing, which found the claimant capable of performing activities that were 3.1 METS or less. In regards to exercising, he could walk one mile in 24–30 minutes at 1–1.5 mph and cycle outdoors at 6 mph. In regards to recreational, he could go horseback riding (walk), play light golf (power golf), and play shuffleboard. In regards to occupational, he could bartend, operate a crane, stand to do light or medium assembly, repair TV/auto/car, and work heavy lever. In regards to activities of daily living, he could cook, drive a car, iron, ride a lawn mower, scrub floor, shower, sweeping, and take a bath (Exhibit 9F/39–40). The undersigned also notes that there are no records in the file from Dr. Pardue since May of 2013.

(AR 17.)

In addition, the ALJ generally summarized the medical evidence and noted that, although the plaintiff had received regular treatment for his allegedly disabling back pain, the treatment was "essentially routine and/or conservative in nature," and the medical documentation indicated that medications had been "relatively effective in controlling the claimant's symptoms." (AR 18 (record citations omitted.) She found that the pain clinic's evaluations of the plaintiff (Exhibit 11F, AR 709–74) and an MRI conducted on March 10, 2010 (AR 586–87) failed to provide objective evidence that the plaintiff was medically prevented from "performing work activity within the established residual functional capacity." (AR 18.) In particular, she noted that, although the plaintiff claimed to need a cane and Dr. Pardue asserted that he needed a cane, there is no prescription for a cane in the file, and the plaintiff had reported, "[a]t one point or another

in the record," that he was able to take care of his personal needs, prepare simple meals, fold laundry, dust, watch television, play solitaire on his computer, and load or unload the dishwasher. (AR 18.) Finally, the ALJ noted inconsistencies in Dr. Pardue's two Medical Sources Statements and also found that the plaintiff's "description of [his] symptoms and limitations . . . has generally been inconsistent and unpersuasive." (AR 18.)

### C. The Plaintiff's Objections

#### 1. *Reliance on Cardiovascular Test*

As an initial matter, the court agrees with the plaintiff that the ALJ's reliance on the cardiopulmonary exercise testing was misplaced. The ALJ characterized the test results as providing evidence that the plaintiff was capable of performing such activities as horseback riding, playing golf and shuffleboard, scrubbing a floor, and working as a bartender or crane operator. The cardiopulmonary test, however, was intended to gauge cardiovascular function, not pain level, flexibility, or mobility. Although the test found that the plaintiff should generally be able to perform activities that required an energy expenditure of 3.1 METS or less—based on his cardiovascular health—the plaintiff terminated the test early on the basis of pain and fatigue, as the ALJ and magistrate judge recognized. Moreover, the activities to which the ALJ referred are those listed on an MET chart as activities that do not stress the *cardiovascular* system above the level the plaintiff could tolerate. The stress test should not have been referred to by the ALJ as evidence that the plaintiff was actually capable of performing the activities on the chart. Nonetheless, because other evidence supports the ALJ's decision, her reference to, and apparent reliance on, the cardiopulmonary test do not detract from the other reasons she provided for rejecting the treating physicians' opinion, as discussed below.

### 2. *Inconsistencies Between Dr. Pardue's Two Statements*

The plaintiff contends that the magistrate judge erred in putting great emphasis on the inconsistencies between Dr. Pardue's description of the plaintiff's postural limitations in his 2011 and 2014 Medical Sources Statements, in light of the plaintiff's evolving condition. The magistrate judge, in fact, accurately summarized Dr. Pardue's two Medical Sources Statements (Doc. No. 20, at 5–6) and properly noted the inconsistencies between them in assessing the evidence supporting the ALJ's conclusion that the plaintiff was not disabled (*id.* at 14). The magistrate judge's—and the ALJ's—reliance on the inconsistencies between Dr. Pardue's two Medical Sources Statements as detracting from the reliability of Dr. Pardue's assessment of the plaintiff's residual functional capacity was not unreasonable. Although, as the plaintiff argues, the two assessments were three years apart, the medical record does not reflect that the plaintiff's physical condition changed significantly during that time frame.

In particular, in his 2011 Medical Source Statement, Dr. Pardue stated that the plaintiff could only occasionally tolerate conditions such as humidity, dust, extreme cold or heat, and vibrations, and needed a library-quiet working environment. (AR 288.) In his 2014 Medical Source Statement, Dr. Pardue assessed the plaintiff as having no such environmental limitations. (AR 788–89.) Besides the fact that this discrepancy is not explained by any particular change in the plaintiff's condition, the environmental limitations assessed in 2011 are not remotely supported by the medical record. Neither the ALJ nor the magistrate judge erred in highlighting the differences between the two Medical Sources Statements and in apparently considering the discrepancies as evidence of exaggeration of the plaintiff's symptoms on the part of Dr. Pardue.

### 3. *The Non-Examining Physician's Acceptance of Dr. Pardue's Medical Source Statement*

The plaintiff insists that the ALJ failed to acknowledge that one of the non-examining

physician consultants expressly conceded that the plaintiff's treating physician's opinion was "not inconsistent with other evidence and is therefore given controlling weight." (Doc. No. 24, at 4 (quoting AR 311).) This failure, he claims, "undercuts the credibility and reliability of every other non-examiner report that hold contrary views, including those upon which the ALJ relied." (*Id.*)

The opinion to which the plaintiff refers, however, is a Psychiatric Review Technique completed by Horace Edward, Ph.D., assessing the plaintiff's mental and psychiatric condition from March 2011 through September 2011. (AR 299–312.) While Dr. Edward indicates that he had reviewed Dr. Pardue's treatment notes dating from February 2011 through August 2011, his summary reflects that he only considered Dr. Pardue's assessment of the plaintiff's psychiatric condition, not his medical condition, and it is in that arena that he found that Dr. Pardue's statement was not inconsistent with other evidence (i.e., Dr. Pardue's own treatment records) and therefore gave it "controlling weight." (*Id.*) And, based on Dr. Pardue's treatment records and opinion, Dr. Edwards concluded that the plaintiff's symptoms and impairments "would not singly or in combination prevent [the plaintiff] from completing or sustaining work-like activities," even though "concentration, persistence and pace, social ability and adaptation are somewhat impacted by the diagnoses." (*Id.*)

The magistrate judge expressly recognized that Dr. Edwards gave "controlling weight to Dr. Pardue's opinion." (Doc. No. 20, at 7.) While the ALJ did not reference Dr. Edwards by name, she nonetheless adopted his findings: "[T]he Administrate Law Judge finds that the claimant has mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." (AR 14.) Further, the ALJ specifically noted that she

considered these limitations in assessing the plaintiff's residual functional capacity. (AR 14.) The plaintiff has not shown that the ALJ's failure to expressly recognize that Dr. Edwards had given controlling weight to Dr. Pardue's opinion resulted in any error on the ALJ's part.

### 4. *The Assessment of the Plaintiff's Residual Functional Capacity*

The plaintiff insists that the record clearly documents abnormal neurological findings on numerous occasions, providing ample support for Dr. Pardue's opinions regarding the plaintiff's residual functional capacity, and that the magistrate judge erred in concluding that the medical records document "minimal functional restrictions." (*See* Doc. No. 24, at 4 (citing AR 525, 541, 552, 634, 640, 660, 664, 698, 701, 703).)

The pages of the Administrative Record cited by the plaintiff are medical treatment notes dating from early 2011 through mid-2013, and, on some of these dates, Dr. Pardue indeed noted the plaintiff's "disturbed" or "asymmetric" gait, "disturbed" station or poor posture ("kyphosia") (*see, e.g.*, AR 525, 541, 634, 640, 660, 664), or tenderness and/or decreased range of motion (AR 701, 703). However, Dr. Pardue's treatment notes document many more occasions on which the doctor either did not conduct a physical examination or did not document any abnormal back-related physical findings at all, other than perhaps spinal tenderness. (*See, e.g.*, AR 542–43, 546–47, 551, 553–54, 635–36, 638 (June, July, September, and December 2011, January and June 2012 examinations, noting normal bulk and tone of muscles in upper and lower extremities, normal gait and station, good posture); AR 697–98, 703 (February and May 2013 exams, noting tenderness at lumbar spine but normal gait and station and normal neurological exam). Treatment notes from the plaintiff's pain management center, Pinnacle Wellness Group, where he began treatment in July 2013, likewise reflect findings of tenderness of the cervical, thoracic and lumbar spine and facet joints, positive Schober's test and straight-leg raise, but normal gait and

good posture, no neurological symptoms, and normal muscle bulk and tone. (*See* AR 713, 722, 733, 743, 752, and 762.)

The fact that the record provides substantial support for the plaintiff's claims is not dispositive. For purposes of this court's review, the question is whether the record provides substantial evidence to support the ALJ's findings. The objective medical findings, in conjunction with the other evidence in the record cited by the ALJ, support the ALJ's conclusion that the plaintiff had minimal functional limitations.

### 5. *The Plaintiff's Conservative Treatment*

The plaintiff also takes issue with the ALJ's findings that he received essentially conservative treatment. He claims that this finding was in error, because he had previously "exhausted all available treatment options by the time of the ALJ hearing, which included multiple neck and back surgeries in the past." (Doc. No. 24, at 6.)

The plaintiff testified that he had two back surgeries in his 20s, and the medical record reflects that he reported to the pain clinic that he had tried joint injections, physical therapy, and surgery in the past but that these treatments were "not helpful." (*See, e.g.*, AR 709.) However, the plaintiff has not pointed to any objective medical finding that other forms of therapy would not be effective. During the time frame relevant to his DIB application, the only form of treatment he sought was narcotic pain medication, and the only practitioner he saw was his internist. The only reason the plaintiff eventually sought treatment at the pain management clinic, as he explained it, was that there was a change in the law regarding who could prescribe long-term narcotic pain medication. In sum, the record provides substantial support for the ALJ's conclusion that the plaintiff's treatment was essentially conservative.

### 6. *Whether the ALJ Gave "Good Reasons"*

The ALJ, in declining to accord controlling weight to Dr. Pardue's decision, did not violate the treating physician rule. She weighed the appropriate factors in giving her "reasons" for not adopting Dr. Pardue's opinion. Specifically, she took note of the lengthy treatment relationship but found that Dr. Pardue's opinion was not entirely consistent with that of the pain management clinic or with the record as a whole. Although the record clearly documents the plaintiff's long-term and consistent complaints of pain, both Dr. Pardue and the pain management clinic indicate that the plaintiff's pain was managed satisfactorily with pain medications, with no reported side effects. (*See, e.g.*, AR 641, 643, 653, 661 (exam notes from February, March, June and September 2012.) In addition, as discussed above, Dr. Pardue and the pain clinic practitioners observed, more often than not, that the plaintiff had normal posture and gait, normal muscle strength and bulk, and no neurological deficits. The medical record contains no findings to support Dr. Pardue's assessment of environmental limitations in 2011, and his assessments regarding the plaintiff's limitations in performing activities of daily living are likewise not supported by the plaintiff's own statements. (*See, e.g.*, AR 639 (Jan. 25, 2012 exam, noting that the plaintiff "is able to perform all ADL's with frequent breaks"); AR 643 (March 21, 2012 exam, noting that the plaintiff is "pleased with his current [medication] regimen and it keeps his pain at a tolerable level where he is able to perform his ADLs."); AR 665 (Nov. 15, 2012 exam, noting that the plaintiff's medications allow him to "participate in his ADLs and improve his quality of life").) The inconsistencies between Dr. Pardue's two Medical Sources Statements, and between his opinions and the objective medical evidence and conservative course of treatment, provided adequate reasons for the ALJ to decline to accord controlling weight to Dr. Pardue's opinions.

The ALJ gave "great weight" to the non-treating consultants' opinions, noting that they were highly qualified practitioners whose opinions were supported by "detailed explanation, rationale, and analysis of the medical evidence of record." (AR 17.) Agency regulations state that opinions from non-treating and non-examining sources are never assessed for "controlling weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Instead, the Commissioner weighs these opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id.* (citing 20 C.F.R. § 404.1527(c)). Other factors that "tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* (citing 20 C.F.R. § 404.1527(c)(6)). In light of the ALJ's decision to accord "little weight" to the treating physicians' opinions, and in light of the substantial objective evidence supporting the non-treating physicians' opinions, it was not unreasonable for the ALJ to accord greater weight to the non-treating consultants' opinions.

## V.  CONCLUSION

For the foregoing reasons, the plaintiff's Objections (Doc. No. 24) are **OVERRULED**; the magistrate judge's R&R (Doc. No. 20) is **ACCEPTED AND ADOPTED**; the plaintiff's Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 16) is **DENIED**; and the SSA's decision is **AFFIRMED**.

This Order constitutes the judgment in this case.

It is so **ORDERED**.

ALETA A. TRAUGER  
United States District Judge